# United States Court of Appeals for the Federal Circuit

2006-1356, -1357, -1358

E-PASS TECHNOLOGIES, INC.,

,

Plaintiff-Appellant,

v.

3COM CORPORATION (also known as 3COM, Inc.),
PALM, INC., PALMONE, INC. and HANDSPRING, INC.,

Defendants-Appellees,

and

VISA INTERNATIONAL SERVICE ASSOCIATION
and VISA U.S.A., INC.,

Defendants-Appellees,

and

PALMSOURCE, INC.,

Defendant-Appellee.

Stephen N. Weiss, Moses & Singer LLP, of New York, New York, argued for plaintiff-appellant E-Pass Technologies, Inc. With him on the brief was Gregory J. Fleesler.

Edward H. Sikorski, DLA Piper Rudnick Gray Cary US LLP, of San Diego, California, argued for defendants-appellees 3Com Corporation (also known as 3Com, Inc.), et al. With him on the brief was John Allcock. Also on the brief were M. Elizabeth Day, Vincent S. Lam, and Sal Lim, of Palo Alto, California.

William J. Bohler, Townsend and Townsend and Crew LLP, of Palo Alto, California, for defendants-appellees Visa International Services Associates, et al. With him on the brief were Madison C. Jellins and Julie J. Han.

Mark D. Rowland, Fish & Neave IP Group of Ropes & Gray LLP, of Palo Alto, California, argued for defendant-appellee PalmSource, Inc. With him on the brief were James T. Canfield and Andrew T. Oliver.

Appealed from: United States District Court for the Northern District of California

Judge D. Lowell Jensen

# United States Court of Appeals for the Federal Circuit

2006-1356, -1357, -1358

E-PASS TECHNOLOGIES, INC.,

Plaintiff-Appellant,

v.

3COM CORPORATION (also known as 3COM, Inc.),
PALM, INC., PALMONE, INC. and HANDSPRING, INC.,

Defendants-Appellees,

and

VISA INTERNATIONAL SERVICE ASSOCIATION
and VISA U.S.A., INC.,

Defendants-Appellees,

and

PALMSOURCE, INC.,

Defendant-Appellee.

_____

DECIDED: January 12, 2007

_____

Before MICHEL, <u>Chief Judge</u>, LINN and PROST, <u>Circuit Judges</u>.

LINN, <u>Circuit Judge</u>.

E-Pass Technologies, Inc. ("E-Pass") appeals from a final summary judgment of non-infringement by the United States District Court for the Northern District of California, in which the court held that none of the defendants directly or indirectly infringed E-Pass's U.S. Patent No. 5,276,311 ("the '311 patent"). <u>E-Pass Techs., Inc. v.</u>

3Com Corp., Nos. 00-CV-2255, 03-CV-4747, 04-CV-0528 (N.D. Cal. Mar. 17, 2006) ("SJ Order"). Because the district court correctly determined that no reasonable jury could have found any of the defendants liable on the basis of the evidence presented, summary judgment was proper, and we affirm.

## I.  BACKGROUND

### A.  Introduction and Prior Appeal

As we discussed in a prior appeal in this case,

> E-Pass is the assignee of the '311 patent, entitled "Method and Device for Simplifying the Use of a Plurality of Credit Cards, or the Like."  The object of the invention is to provide a method and device for substituting a single electronic multifunction card for multiple credit cards. . . . To address problems associated with carrying multiple cards, "the user needs, and is required to carry about, [only] a single card."

E-Pass Techs. v. 3Com Corp., 343 F.3d 1364, 1365 (Fed. Cir. 2004) ("E-Pass I") (quoting '311 patent, col. 1, ll. 64–66).  Claim 1 of the '311 patent, the only independent claim asserted in this litigation, reads as follows:

> A method for enabling a user of an electronic multi-function card to select data from a plurality of data sources such as credit cards, check cards, customer cards, identity cards, documents, keys, access information and master keys comprising the steps of:
>
> transferring a data set from each of the plurality of data sources to the multi-function card;
>
> storing said transferred data set from each of the plurality of data sources in the multi-function card;
>
> assigning a secret code to activate the multi-function card;
>
> entering said secret code into the multi-function card to activate the same;
>
> selecting with said activated multi-function card a select one of said data sets; and
>
> displaying on the multi-function card in at least one predetermined display area the data of said selected data set.

2006-1356, -1357, -1358                     2

'311 patent, col. 10, l. 54–col. 11, l. 3.

On February 28, 2000, E-Pass filed a complaint for patent infringement against 3Com Corporation and Palm, Inc. (collectively, "3Com"). In it, E-Pass accused 3Com of inducing consumers to practice the steps of the patented method on its Palm VII and Palm VIIx personal digital assistant ("PDA") products. Following a claim construction that construed "electronic multi-function card" to be "[a] device having the width and outer dimensions of a standard credit card with an embedded electronic circuit allowing for the conversion of the card to the form and function of at least two different single-purpose cards," E-Pass Techs. v. 3Com Corp., 177 F. Supp. 2d 1033, 1037 (N.D. Cal. 2001), the district court granted 3Com's motion for summary judgment of noninfringement both literally and under the doctrine of equivalents, E-Pass Techs. v. 3Com Corp., 222 F. Supp. 2d 1157, 1165 (N.D. Cal. 2002).

E-Pass appealed. On appeal, we held that the district court had erred by "requiring the dimensions of a standard credit card." E-Pass I, 343 F.3d at 1371. We observed that "the ordinary meaning of the word 'card' here, as used in the phrase 'electronic multi-function card,' is the proper construction," and we vacated and remanded to the district court to address the issue of infringement under the proper construction. Id. at 1370–71. Notably, we emphasized that "it may be or may not be that the accused Palm Pilot devices literally infringe" under that construction. Id. at 1371.

## B. Events After Remand

After we remanded the action against 3Com, E-Pass filed two new infringement actions in the district court. It filed the first new action, Case No. 03-CV-4747, on

October 22, 2003, against Visa U.S.A., Inc., and Visa International Service Association (collectively, "Visa"). In that action, E-Pass alleged that Visa had infringed the '311 patent by using a Palm V PDA in two demonstrations in 2001. E-Pass filed the second new action, Case No. 04-CV-0528, against PalmSource, Inc., palmOne, Inc., and Handspring, Inc., on February 9, 2004. In the second new action, it made claims of direct, induced, and contributory infringement of the '311 patent based on three new PDA product lines—the Tungsten, Zire, and Treo lines—that had been introduced since the filing of the initial action.

On March 17, 2006, the district court granted summary judgment of noninfringement as to all defendants. SJ Order. It rested its finding of noninfringement on two independent grounds. First, it held that even under a broader construction of "card," none of the accused devices could infringe the "electronic multi-function card" limitation. Id., slip op. at 25–34. Second, it held that E-Pass had failed to adduce sufficient evidence to support a finding that any of the defendants or their customers had practiced all of the steps of the claimed method. Id., slip op. at 17–25. Having demonstrated no instances of direct infringement, E-Pass could not prove liability for induced or contributory infringement.

E-Pass appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

We review without deference all of the issues here on appeal: the propriety of the district court's grant of summary judgment, see E-Pass I, 343 F.3d at 1367; the district court's claim construction, see id.; and the district court's interpretation of this court's mandate in E-Pass I, see Tronzo v. Biomet, Inc., 236 F.3d 1342, 1346 (Fed. Cir. 2001).

Summary judgment is appropriate when, based on the record, no genuine issue exists as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A genuine issue exists if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

On appeal, E-Pass challenges both grounds upon which the district court rested its judgment of noninfringement. First, it argues that the district court violated this court's mandate in E-Pass I when it granted summary judgment of noninfringement based on the "electronic multi-function card" limitation. It further argues that even without consideration of the law of the case, summary judgment as to that limitation was improper either as a matter of literal infringement or under the doctrine of equivalents. Second, it argues that the district court ignored circumstantial evidence that the defendants or their customers practiced the steps of the claimed method. Therefore, it argues, summary judgment as to the step limitations was improper.

To prevail, E-Pass must convince us to overturn the district court's rulings as to both issues. We consider each of its arguments in turn.

A.  The "Electronic Multi-Function Card" Limitation

1.  Law of the Case

"Once a case has been decided on appeal, the rule adopted is to be applied, right or wrong, absent exceptional circumstances, in the disposition of the lawsuit." Gindes v. United States, 740 F.2d 947, 949 (Fed. Cir. 1984) (quoting Schwartz v. NMS Indus., Inc., 575 F.2d 553, 554 (5th Cir. 1978)). E-Pass argues that the district court disobeyed the mandate of this court by entering summary judgment in favor of the

defendants as to the subject of the prior appeal, the "electronic multi-function card" limitation of claim 1 of the '311 patent. It further argues that the district court disobeyed our mandate when it elaborated upon our claim construction in E-Pass I in light of the teachings of this court's en banc decision in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) (en banc). We disagree as to each of these contentions.

a. Summary Judgment

E-Pass's first argument rests in substantial part on our statement in E-Pass I that "issues of material fact remain in dispute as to both literal and doctrine of equivalents infringement under the proper construction" of the term "card." E-Pass I, 343 F.3d at 1365. That statement, however, must be read in context. As the very same sentence announced, we vacated the grant of summary judgment and remanded to the district court for further proceedings. Id. By vacating, we signaled that, although the district court's prior decision rested upon erroneous grounds, a proper claim construction might support a judgment (summary or otherwise) in favor of either party, depending on the evidence and argument submitted to the district court on remand and considered by the district court in the first instance. Cf. Communities for Equity v. Mich. High Sch. Athletic Ass'n, 459 F.3d 676, 680 (6th Cir. 2006) (noting that when the Supreme Court grants a writ of certiorari, vacates, and remands, it "does not indicate, nor even suggest, that the lower court's decision was erroneous").

The balance of our opinion in E-Pass I supports this interpretation. We discussed in detail the claim construction of the term "card" and the district court's error in construing "card" to mean a card with the precise dimensions of a standard credit card. E-Pass I, 343 F.3d at 1367–71. At the conclusion of this discussion, we

2006-1356, -1357, -1358            6

emphasized that "under the correct construction of 'card' in this context . . . it may or may not be that the accused Palm Pilot devices literally infringe." Id. at 1371. Indeed, we could not have intended to foreclose a summary judgment of noninfringement because the record did not yet contain the evidence that the parties would put forward in support of their infringement and noninfringement contentions under the proper construction.

Accordingly, the district court correctly concluded that it had the authority to entertain the defendants' motions for summary judgment on remand. SJ Order, slip op. at 11, 12; see also Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1220 (Fed. Cir. 2006) ("Issues not decided by the court in a prior proceeding are not covered by the law-of-the-case doctrine."). As the district court observed, we did not in E-Pass I "inten[d] . . . to preclude [the district court] from hearing a complete summary judgment motion as to the Palm VII on remand."[1] SJ Order, slip op. at 12. As we discuss next, the district court on remand properly undertook a thorough and thoughtful analysis of the infringement issues, and in so doing, it followed our claim construction in E-Pass I.

b. Claim Construction

In E-Pass I, we addressed the question of whether the district court had improperly added a dimensional limitation to the claim. See 343 F.3d at 1368–69. We concluded that a dimensional limitation was not warranted and overturned a claim construction that improperly limited the claim to encompass only devices having exact

---

[1] Of course, the decision in E-Pass I does not constitute law of the case as to parties and accused devices that were not yet part of the litigation when that decision issued. See Jamesbury Corp. v. Litton Indus. Prods., Inc., 586 F.2d 917, 920 (2d Cir. 1978) (noting that "because the present case involves a different defendant . . . the earlier decision . . . is n[ot] 'law of the case'").

credit card dimensions. Id. at 1368. We went on to hold that "the ordinary meaning of the word 'card' . . . , as used in the phrase 'electronic multi-function card,' is the proper construction." Id. at 1370–71. From this, we articulated a definition of "card"—namely, a "flat rectangular piece of stiff material"—derived from several general-purpose dictionaries. See id. at 1367–68.

Following our decision in E-Pass I and prior to the district court's ruling on remand, our court, sitting en banc, decided Phillips. 415 F.3d at 1303. In its brief, Visa argues that the district court was "at liberty to reconstrue 'card'" because Phillips "supercedes the 3Com panel decision." Visa Br. at 19–20. This is an overstatement. A claim construction articulated by a prior panel decision of this court ordinarily remains the law of the case unless it is in conflict with a subsequent decision by this court sitting en banc or by the Supreme Court. See Cal. Fed. Bank v. United States, 395 F.3d 1263, 1274–75 (Fed. Cir. 2005) (declining to revisit earlier ruling where intervening en banc decision was not in direct conflict, and where Supreme Court analysis of the same issue controlled); see also United States v. Moran, 393 F.3d 1, 7 (1st Cir. 2004) ("[A] legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled . . . ."). Here, we see no conflict between the guidance provided in Phillips and the claim construction we articulated in E-Pass I. As we discuss below, see infra Part II.A.2, the district court correctly applied our construction as the governing definition of "card."

Nonetheless, any articulated definition of a claim term ultimately must relate to the infringement questions that it is intended to answer. See Wilson Sporting Goods

Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1326 (Fed. Cir. 2006) ("[T]he legal function of giving meaning to claim terms always takes place in the context of a specific accused infringing device or process."). The definition of "card" that we articulated in E-Pass I described the properties of a "card" relevant to the accused devices, and it thereby sufficed to determine the question of infringement. Thus, the district court's observation that not every "flat rectangular piece of stiff material" is a "card," see SJ Order, slip op. at 26, was not strictly necessary to its holding.

Even so, the district court's observation was correct. For example, no reasonable jury, if properly instructed, would conclude that a 4´×8´×½˝ piece of plywood or a plate glass window infringes the "card" limitation of '311 patent claim 1. See id. The specification of the '311 patent makes it clear that a "card," as used in the patent's claims, is something a user will "carry about." See, e.g., '311 patent, col. 1, l. 44. Although not a precise restriction on size or portability, the attributes of being able to be "carried about" and of not having protruding buttons, keyboards, antennae, indented display screens, or hinged covers are characteristics that a complete claim construction of "card" can be expected to embrace.

Moreover, we reiterated in Phillips the paramount importance to claim construction of the language of the claims themselves. See Phillips, 415 F.3d at 1312; see also Vitronics Corp. v. Conceptronics, Inc., 90 F.3d 1576, 1582 ("[W]e look to the words of the claims themselves . . . to define the scope of the patented invention."). This case hinges on the construction of a term that not only bears one of its ordinary meanings, but is a straightforward name for an everyday object. Most members of a jury are likely to have at least one "card" in the sense of the '311 patent in their pockets,

wallets, or purses. The district court implicitly recognized this observation when it boiled the infringement inquiry down to a "straightforward question—using the plain meaning of the word 'card,' can any of the accused devices be considered to be a 'card'?" SJ Order, slip op. at 33.

### 2. Literal Infringement

Answering this question of infringement brings us, as it brought the district court, back to an application of the claim construction in E-Pass I. As the district court correctly observed, the accused devices are neither flat nor rectangular:

> They have buttons, joysticks and keyboards which project above the surface. They have screens which sit below the surface. Some have indented spaces holding a stylus which can be used on the device. They have projecting antennae. The Treo cell phone has a full QWERTY keyboard and a flip cover which sits at a 150 degree angle to the surface of the phone when it is open.
> . . . .
> . . . A review of the accused devices . . . shows that none of them meet the definition [of rectangular]. Corners and edges are fully rounded. The sides of the devices are generally curved, some convex, some concave, rather than straight. They have built-in or flip-up antennae which completely alter the straight line sides of a rectangle. Some have USB connectors which have the same effect.

SJ Order, slip op. at 31–32. Likewise, the accused devices are not "piece[s] of stiff material," see E-Pass I, 343 F.3d at 1371, but rather "are all elaborate mixes of multiple pieces and multiple materials," SJ Order, slip op. at 32. Accordingly, the district court properly concluded that no reasonable jury could find that the accused devices are "cards."

E-Pass argues that in performing its infringement analysis, the district court improperly treated the words of our claim construction as additional claim limitations. E-Pass is correct that "[c]laim interpretation is the process of giving proper meaning to the claim language," Abtox, Inc. v. Exitron Corp., 122 F.3d 1019, 1023 (Fed. Cir. 1997),

and that the terms courts use to enunciate the proper construction of a claim are not themselves limitations that require interpretation. Here, however, any error was harmless. Although the district court may have carried the process of claim construction unnecessarily too far, it did not improperly depart from the claim construction of "card" as articulated by E-Pass I.

Accordingly, we affirm the district court's grant of summary judgment of noninfringement as to the "electronic multi-function card" limitation.

### 3. The Doctrine of Equivalents

The above discussion does not resolve the question of whether the accused devices might meet the "card" limitation of claim 1 under the doctrine of equivalents. The district court held that "[i]nasmuch as the patent method must be performed on a card, a performance on something that is not a card cannot be considered to be a performance in the same way as that required by the patent, and cannot constitute infringement by the doctrine of equivalents." Id., slip op. at 36. However, this conclusion is too summary.

Under the "all elements" rule, "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29 (1997). As we recently explained in Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., the "all elements rule" may foreclose resort to the doctrine of equivalents where "the evidence is such that no reasonable jury could conclude that an element of an accused device is equivalent to an element called for in the claim, or that the theory of equivalence to support the

conclusion of infringement otherwise lacks legal sufficiency." 469 F.3d 1005, 1018–19 (Fed. Cir. 2006).

E-Pass's theory of equivalence is that no reasonable jury could conclude that the differences between the accused products and the "electronic multi-function card" of the '311 patent are substantial. Mot. for Summ. J. of Infringement Against PalmOne, Inc., E-Pass, Inc. v. 3Com, Inc., Nos. 00-CV-2255, 03-CV-4747, 04-CV-0528 (N.D. Cal. Aug. 26, 2005) (Dckt. No. 464). This is the proper inquiry. To hold that performance of the claimed method on something not a card is not "a performance in the same way as that required by the patent," SJ Order, slip op. at 36, is to beg the question of whether the accused devices—which, taken as a whole, are alleged to meet a single limitation of the claimed method—are insubstantially different from a "card."

We need not decide whether the district court's judgment as to the doctrine of equivalents can be sustained on other grounds, nor indeed whether the alleged equivalence of the accused devices to cards is amenable to summary judgment. As we discuss next, we agree with the district court that E-Pass has failed to meet its burden of proof on the question of whether anyone has practiced the steps of the claimed method. This, without more, warrants affirmance.

## B.  The Steps of the Claimed Method

The district court held, simply, that "E-Pass has submitted no evidence that the patented method has ever been practiced on any Palm VII device. The same circumstance is true as to the Tungsten, Zire and Treo devices—there is no evidence that the patented method has ever been practiced on any of these devices." SJ Order, slip op. at 17. E-Pass argues that this summary conclusion improperly ignores

circumstantial evidence of direct infringement that supports its claim of inducement of infringement as to all of these devices. We disagree; we have no reason to believe that the district court ignored any of this evidence, all of which was before it. Cf. Medtronic, Inc. v. Daig Corp., 789 F.2d 903, 906 (Fed. Cir. 1986) ("We presume that a fact finder reviews all the evidence presented unless he explicitly expresses otherwise."). Even when all the evidence that E-Pass cites is accounted for, its claim cannot survive summary judgment.[2]

E-Pass's difficulty is twofold. Procedurally, it is hornbook law that to survive the defendants' motions for summary judgment, E-Pass must "make a showing sufficient to establish the existence of [each] element essential to [its] case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Substantively, because the language of most of the steps of its method claim refer to the completed results of the prior step, E-Pass must show that all of those steps were performed in order. E.g., '311 patent, claim 1 ("transferring a data set . . . ; storing said transferred data set"); see Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc., 152 F.3d 1368, 1376 (Fed. Cir. 1998) (holding that "the sequential nature of the claim steps is apparent from the plain meaning of the claim language and nothing in the written description suggests otherwise").

---

[2]     E-Pass does not raise in its opening brief any arguments against the district court's finding that there is no evidence of infringement during the two demonstrations that E-Pass described in its complaint against Visa. See SJ Order, slip op. at 17–25. Accordingly, and because we see no reason why doing so would be unfair, we exercise our discretion and deem this issue to have been waived. See Becton Dickinson & Co. v. C.R. Bard, Inc., 922 F.2d 792, 800 (Fed. Cir. 1990) ("[A]n issue not raised by an appellant in its opening brief . . . is waived."); id. (noting that the rule "may as a matter of discretion not be adhered to where circumstances dictate that it would result in basically unfair procedure").

The documents that E-Pass cites on appeal are not sufficient to meet its burden under Celotex. First, it cites a chart of documents produced by Visa, showing that Visa was interested in PDA-based payment technology. However, this chart does not demonstrate that Visa actually performed or induced anyone to perform all of the steps of the claimed method, much less that it did so in the necessary order and in the United States. Second, it cites to a Visa document describing plans for a contactless payment demonstration in Cartes, France, in 2004. This, too, fails to demonstrate that the steps of the method were actually performed, much less that they were performed in the United States. Likewise, its citations to business analyses of proposed contactless payment protocols fail to show that any such protocol was ever actually deployed or that, if deployed, it would infringe.

E-Pass's final piece of evidence, to which it devotes the bulk of its argument, is a set of excerpts from the product manuals for various of the accused devices. These, it argues, establish infringement under Moleculon Research Corp. v. CBS, Inc., 793 F.2d 1261 (Fed. Cir. 1986). In Moleculon, we considered a claim of induced infringement against the distributor of a Rubik's Cube-like puzzle. Id. at 1272. The patented method—a protocol for solving such a puzzle—could only be infringed by a user, not the manufacturer, of the puzzle, just like the method at issue here. We held that "evidence of extensive puzzle sales, dissemination of an instruction sheet teaching the method of restoring the preselected pattern with each puzzle, and the availability of a solution booklet on how to solve the puzzle" was sufficient to support a finding that a puzzle distributor had induced infringement of the claimed method. Id.

In contrast, the evidence here shows, at best, that the Palm defendants taught their customers each step of the claimed method in isolation. Nowhere do the manual excerpts teach all of the steps of the claimed method together, much less in the required order. Accordingly, it requires too speculative a leap to conclude that any customer actually performed the claimed method. Indeed, the very same record evidence upon which E-Pass attempts to rely also shows that the accused PDAs are general-purpose computing devices that can be used for a variety of purposes and in a variety of ways. In comparison, the device at issue in Moleculon was intended to be used in only one way—to practice the infringing method—and that method was explicitly taught by the proffered instructions. Id. If, as E-Pass argues, it is "unfathomable" that no user in possession of one of the accused devices and its manual has practiced the accused method, see E-Pass Repl. Br. at 16, E-Pass should have had no difficulty in meeting its burden of proof and in introducing testimony of even one such user. Having failed to meet that burden, E-Pass has no basis to overturn the district court's decision.

## III. CONCLUSION

For the foregoing reasons, we conclude that the district court properly granted summary judgment in favor of the defendants. Accordingly, the judgment is

AFFIRMED.